# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**STEVEN PURCELL,**

 **Petitioner,**

v.           Case No. 3:21cv989-LC/MAF

**M.V. JOSEPH, WARDEN,**

 **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On or about August 24, 2021, Steven Purcell, a federal prisoner proceeding pro se, filed petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner asserts the Bureau of Prisons (BOP) has denied him prior custody credit. *Id*. at 3.

On November 29, 2021, Respondent filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies and For Failure to State a Claim Upon Which Relief May Be Granted, with exhibits. ECF No. 9. Petitioner Purcell has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 5; *see also* ECF No. 8 ("Objection for the Record," filed October 5, 2021, in which Petitioner "request[s] that the Court order the Respondent to respond with a show cause within a time period not to exceed twenty days").

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned concludes that this § 2241 petition should be denied and Respondent's motion to dismiss should be denied as moot.

## Background

According to his filing, Petitioner Purcell is incarcerated at the Federal Prison Camp (FPC) in Pensacola, serving a sentence imposed by the U.S. District Court for the Middle District of Florida, in case number 8:18cr466-MSS/AAS. *See* ECF No. 1 at 1-2. Similarly, Respondent indicates Purcell is a federal inmate at FPC Pensacola. ECF No. 9 at 2. As of the date of this Report and Recommendation, however, the BOP's website shows Petitioner Purcell's location as the Orlando Residential Reentry Management Office. *See* www.bop.gov/inmateloc. His current release date is March 5, 2023. *See id*. Petitioner has not updated his address with this Court.

Purcell filed this § 2241 petition asserting the BOP has "denied appropriately earned 'time served.'" ECF No. 1 at 3. He asserts he has presented his claim to BOP, either through the prison grievance system or

other administrative proceeding, but "BOP refused to recognize court's orders." Id.

Respondent filed a motion to dismiss, with exhibits, asserting the petition should be dismissed because Purcell did not exhaust his administrative remedies and he has not stated a claim upon which relief may be granted. ECF No. 9. Regarding exhaustion, Respondent asserts Purcell "filed for administrative remedies at the institutional and Regional level only and failed to file an appeal of the denial of his Regional level remedy to the Office of General Counsel in Washington, D.C., which is the last step in the Administrative Remedy process." Id. at 3. Respondent further asserts Purcell has not stated a claim upon which relief can be granted because he is not entitled to the credit he seeks for time he spent on home detention, and his "sentence has been accurately computed pursuant to federal statute and [BOP] policy." Id. at 4. Respondent asserts the petition should be dismissed on this basis as well. Id. at 9.

## **Analysis**

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus. See United States v. Hayman, 342 U.S. 205 (1952).

The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." As noted in Hayman, prisoners must bring habeas corpus applications in the district of confinement. 342 U.S. at 213. Because courts with federal prisons in their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted § 2255 of Title 28. *See id.* at 212-14, 218; *see also* Wofford v. Scott, 177 F.3d 1236, 1239 (11th Cir. 1999).

The language of § 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving § 2241 available to challenge the continuation or execution of an initially valid confinement. *See* McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1081 (11th Cir. 2017); Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351-52 (11th

Cir. 2008); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence). Thus, § 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention. *See* Antonelli, 542 F.3d at 1352 (petition challenging decision of federal Parole Commission is properly brought pursuant to § 2241); Thomas v. Crosby, 371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought pursuant to § 2241); Bishop v. Reno, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition challenging Bureau of Prisons' administration of service credits, including calculation, awarding, and withholding, involves execution rather than imposition of sentence, and thus is matter for habeas corpus).

In his § 2241 petition, Purcell challenges the BOP's computation of his sentence. ECF No. 1. Specifically, he challenges the BOP's decision not to allow credit on his prison sentence for the time he spent on home detention. *Id*. at 3; *see* ECF No. 9 at 4.

The U.S. Attorney General, acting through the BOP, administers a federal defendant's sentence and initially has the exclusive authority to

determine when a federal sentence commences and to compute sentence credit awards after sentencing. 18 U.S.C. §§ 3585(a), 3621(b); United States v. Wilson, 503 U.S. 329, 335 (1992); Rodriguez v. Lamar, 60 F. 3d 745, 747 (11th Cir. 1995). A federal prison sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Further,

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent <u>in official detention</u> prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Id. § 3583(b) (emphasis added).

After a petitioner exhausts administrative remedies with the BOP, the district court may review the constitutionality of the BOP's decision and statutory construction. See Rodriguez, 60 F. 3d at 747. "[I]f congressional

purpose is clear, then interpreting courts and administrative agencies 'must give effect to the unambiguously expressed intent of Congress.'" *Id*. (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-43 (1984)). If the statutory provision is silent or ambiguous, the court must defer to the agency's reasonable interpretation unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute.'" *Id*. (quoting Chevron, 467 U.S. at 844).

Here, Respondent asserts that although Purcell began the administrative remedy process, he did not complete that process and, thus, he has not exhausted his administrative remedies regarding his request for credit. ECF No. 9 at 3. In support, Respondent attaches the declaration of Janet Gignalliat, the Warden's Secretary at FPC Pensacola. *Id*. Ex. 1. As part of duties in this position, Gignilliat serves as the Administrative Remedy Clerk and has access to BOP records. *Id*. at 1. She is familiar with the procedures in BOP Program Statement 1330.18 and has access to the BOP computerized database, SENTRY, "which maintains records of all administrative remedies filed by inmates incarcerated with the [BOP], the dates thereof, and their dispositions." *Id*.; *see id*. at 2. Gignilliat "reviewed

inmate Purcell's SENTRY Administrative Remedy records," which indicate "inmate Purcell filed a BP-9, at the institution, which was received on April 9, 2021, and assigned remedy number 1076242-F1." *Id*. at 3. She states "[t]hat remedy was denied on April 20, 2021," *id*., and the documents are attached to her Declaration, *id*. Ex. 2 Attach. 1. She also states, "Inmate Purcell filed an appeal of his grievance to the Regional Counsel's office on May 5, 2021," and "[t]hat remedy was denied on June 18, 2021." *Id*. Ex. 1 at 3; *see id*. Ex. 2 Attach. 2. Finally, Gignilliat states that "Inmate Purcell did not file an appeal of the denial of his Regional level remedy to the Office of General Counsel in Washington, D.C., which is the last step in the Administrative Remedy process." *Id*. Ex. 1 at 3.

The Eleventh Circuit Court of Appeals has held, in <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467 (11th Cir. 2015), that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect, overruling its earlier decision in <u>Gonzalez v. United States</u>, 959 F.2d 211 (11th Cir. 1992). The court explained that exhaustion of administrative remains a requirement, "it's just not a jurisdictional one." <u>Santiago-Lugo</u>, 785 F.3d at 475.

> What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own. A court has the discretion to

Case No. 3:21cv989-LC/MAF

> accept or reject a concession from the respondent that administrative remedies have been exhausted. And because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.

*Id*. at 475 (citations omitted).

As stated above, in his petition, Purcell asserts he has presented his claim to BOP, either through the prison grievance system or other administrative proceeding, but "BOP refused to recognize court's orders." ECF No. 1 at 3. Purcell has not filed a reply to Respondent's motion to dismiss. In addition, Purcell has not updated his address with the Court. Accordingly, his petition may be dismissed on this basis.

Regardless, on the merits, Petitioner Purcell is not entitled to relief. *See* Dawson v. Scott, 50 F.3d 884 (11th Cir. 1995); Rodriguez, 60 F.3d at 748. The Eleventh Circuit has explained:

> Although the language differs in section 3568 [which provided that "[t]he Attorney General shall give any . . . person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed"] and present section 3585(b), the majority of circuits that have considered the issue have determined that "the term

> 'custody' under § 3568 has the same meaning as the phrase 'official detention' under § 3585."...
>
> Interpreting section 3568, the Former Fifth Circuit held that "custody" is "characterized by incarceration," and that credit against a federal sentence does not accrue "until the prisoner is received at the place of imprisonment." The Former Fifth Circuit also determined that a presentence convict's time on a "highly restricted bond" was not "custody" under section 3568 because it was not incarceration.

Dawson, 50 F.3d at 887-88 (citations and footnotes omitted). The Eleventh Circuit held that a § 2241 petitioner was not entitled to sentence credit for time spent confined in a halfway house, explaining:

> Dawson was confined to the premises of the halfway house at night only. During the day, he was to work at a job or to seek employment. Such liberty is markedly different from custodial incarceration in a penitentiary. *See* United States v. Parker, 902 F.2d 221, 222 (3d Cir. 1990) (holding that confinement "subject to a defendant's being released to go to work, cannot possibly be equated with an equivalent period of imprisonment"). Thus, we have joined other circuits that have determined that custody or official detention time is not credited toward a sentence until the convict is imprisoned, and that <u>release stipulations or imposed conditions that do not subject a person to full physical incarceration do not qualify as official detention</u>.

*Id*. at 888 (footnote omitted; emphasis added). The court further explained:

> [A]t the time pertinent to Dawson's sentence, the BOP, as the administering agency, specifically had determined that *release* on bail or bond, despite the conditions, was *not creditable* toward a sentence, but that incarceration time was creditable. At the first appearance of a criminal defendant before a judicial officer after arrest, the defendant is either detained or released, with or

without conditions. 18 U.S.C. § 3142(a). Dawson's case exemplifies both possibilities and the resulting sentence credit consequences. When he was arrested, Dawson was officially imprisoned or detained, for which he received credit against his sentence. Subsequently, he was released on bond to a halfway house and, later, to a safe house, for which he alleges that he improperly did not receive sentence credit. The fact that Dawson did not have a home to which he could be released on bond and, thus, had to reside in a halfway house is inconsequential with regard to sentence credit. "[C]onfinement to the comfort of one's home is not the functional equivalent of incarceration in either a practical or a psychological sense." [United States v.] Zackular, 945 F.2d [423,] 425 [(1st Cir. 1991)]. For confinement purposes, a federal criminal defendant may be in one of two states: released or detained. It is Dawson's *release status* during the time that he was in halfway and safe houses, rather than official detention, that is determinative as to sentence credit.

*Id*. at 890-91 (footnotes omitted). See Reno v. Koray, 515 U.S. 50, 53 (1995) (holding that time spent by prisoner at community treatment center while released on bail pursuant to Bail Reform Act, before commencement of his federal sentence, was not "official detention" and thus prisoner not entitled to sentence credit under § 3535(b)).

Respondent asserts the BOP has properly calculated Purcell's sentence. ECF No. 4-9. In support, Respondent has provided the Declaration of Michelle Hassler, a Management Analyst at the Designation and Sentence Computation Center, Federal BOP. ECF No. 9-3. Hassler states that she has "access to BOP records both computerized and hard files

as they relate to the sentence computation" of Petitioner Purcell and she has "audited and reviewed the records related to Petitioner's federal sentence computation as he alleges he is entitled to prior custody credit." *Id*. at 1. She explains Purcell's federal sentence computation:

> 3.  On June 20, 2018, Petitioner was arrested by the Sarasota County Sheriff's Office, Sarasota, Florida for Trafficking Illegal Drugs 30 Kilograms or More MDMA in Case #2018 CF 009395. Petitioner was released on bond June 27, 2018.
>
> 4.  On October 22, 2018, Petitioner was arrested by the U.S. Marshals Service (USMS) for Conspiracy to Possess with Intent to Distribute MDMA, in Case #8:18-CR-466-T-35AAS. Petitioner was released on bond October 23, 2018.
>
> 5.  On October 24, 2018, Sarasota County Circuit Court, Sarasota, County Florida dismissed Case #2018 CF 009395.
>
> 6.  On July 23, 2019, Petitioner was sentenced by the U.S. District Court for the Middle District of Florida to a 36-month term of imprisonment, in Case #8:18-CR-466-T-35AAS. At sentencing the Court allowed Petitioner to voluntary surrender after his co-defendants were sentence in this case; however, as a special condition of his pretrial release the Court stated, ". . . the defendant shall be placed on Home Detention with electronic monitoring with allowances for medical appointments and basic necessities of living for his mother. Any additional allowances requested by the defendant shall be preapproved at the discretion of Pretrial Services."
>
> 7.  On August 25, 2020, Petitioner voluntary surrendered to the Federal Prison Camp ("FPC"), Pensacola, Florida for service of the federal sentence.
>
> 8.  Program Statement 5880.28, <u>Sentence Computation Manual</u>

> (CCCA of 1984), and Title 18 U.S.C. § 3585(b), states, "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served." Accordingly, Petitioner's 36-month federal term of confinement commenced August 25, 2020, the date Petitioner voluntary surrendered to FPC Pensacola.
>
> 9.   According to Program Statement 5880.28, Sentence Computation Manual (CCCA) of 1984, the Bureau applies credit for time spent in "official detention" pursuant to the provisions of Title 18 U.S.C. § 3585(b). "'Official detention' is defined . . . as time spent under a federal detention order." Additionally, time spent under restrictive conditions as a condition of release from custody via bond is not creditable toward a term of confinement, as time spent under "highly restrictive" conditions, including time spent under "home confinement," is not considered "official detention." In Reno v. Koray, 115 S.Ct. 2021 (1995), the Supreme Court upheld the Bureau's position that time spent under restrictive conditions as a condition of release from custody is not "official detention" under Title 18 U.S.C. § 3585(b).

*Id*. at 1-2. Thus, Hassler concludes BOP properly calculated Purcell's sentence, which began August 25, 2020, when he voluntarily surrendered, and properly allowed no credit from the time he had spent released on bond in home confinement:

> 10.   The Petitioner's federal sentence was computed and audited, commencing August 25, 2020, the date he voluntary surrendered to begin service of his sentence. Petitioner received 10 days of applicable jail credit, from June 20, 2018 through June 27, 2018, and October 22, 2018 through October 23, 2018, resulting in a projected release date of March 5, 2023, via Good Conduct Time release.

Case No. 3:21cv989-LC/MAF

11. Federal statute, Bureau policy and case law preclude the application for time Petitioner was released from custody via bond, even though he was subject to restrictive conditions.

*Id*. at 2.

"Because the BOP's construction is 'permissible,' 'reasonable,' and not an 'arbitrary, capricious, or manifestly contrary' statutory interpretation, we must defer to it." Dawson, 50 F.3d at 891 (quoting Chevron, 467 U.S. at 843). Accordingly, if considered on the merits, Purcell's § 2241 petition should be denied.

## Conclusion

It is therefore respectfully **RECOMMENDED** that the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED** and Respondent's motion to dismiss (ECF No. 9) be **DENIED as moot.**

**IN CHAMBERS** at Tallahassee, Florida, on February 23, 2022.

                          S/ Martin A. Fitzpatrick
                          **MARTIN A. FITZPATRICK**
                          **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.